**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

DEXTER SHAW,

    Plaintiff,

v.

ROBERT TOOLE; DEPUTY WARDEN
JOHN PAUL; and MILTON SMITH,

    Defendants.

CIVIL ACTION NO.: 6:14-cv-48

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Valdosta State Prison in Valdosta, Georgia, filed a cause of action, as amended, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.*, contesting certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. (Docs. 1, 10, 22.) Defendants Robert Toole, John Paul, and Milton Smith ("Defendants") filed a Second Motion to Dismiss. (Doc. 43.) Plaintiff filed a Response, (doc. 57), and Defendants filed a Reply. (Doc. 62.) Plaintiff filed a Surreply. (Doc. 63.) For the reasons which follow, Defendants' Motion should be **GRANTED**, and Plaintiff's Complaint should be **DISMISSED**, without prejudice. Based on the undersigned's recommended disposition of Defendants' Second Motion to Dismiss, Plaintiff's Motions to Amend/Correct, (docs. 33, 35), Motion for Leave to File, (doc. 41), Motion for Extension of Time, (doc. 42), Motion for Defendants to Respond to his Complaint, (doc. 50), and his Motion to Appoint Counsel, (doc. 54), are **DISMISSED** as

moot. In addition, Defendants' first Motion to Dismiss, (doc. 28), also should be **DISMISSED** as moot. Finally, Plaintiff should be **DENIED** leave to appeal *in forma pauperis*.

BACKGROUND[1]

Plaintiff asserts he is a Suma Muslim who adheres to Islam and its teachings, including following the dietary prohibitions against eating chicken and other meats and meat byproducts. (Doc. 10, p. 2.) Plaintiff states he signed up in 2009 to receive vegan meals through the Georgia Department of Corrections' Alternative Entrée Program based on his sincerely held religious beliefs, and the "religious authorities" approved his placement in the program. (Id. at p. 3.) Plaintiff asserts he was transferred to Georgia State Prison on March 13, 2014, and he immediately wrote Defendant Toole, the warden, to inform him of his (Plaintiff's) vegan diet requirement. (Id.) According to Plaintiff, Defendant Toole failed to respond. Plaintiff states he was forced to eat around the meat and meat byproducts on his trays, which resulted in him being able to eat very little food, such as a spoonful of vegetables or an occasional piece of fruit. (Id.) Plaintiff maintains he lost a significant amount of weight and became violently ill. (Id.)

Nevertheless, Plaintiff contends, prison officials ignored his need for adequate nutrition and his required diet. In particular, Plaintiff asserts Defendant Paul informed him Georgia State Prison did not participate in the Alternative Entrée Program, so Plaintiff would have to "eat around the foods [he] cannot eat." (Id.) Plaintiff also asserts he filed a grievance on March 27, 2014, and alleged he was being denied adequate nutrition and his required vegan meals. However, Plaintiff maintains, he learned a month later that the grievance coordinator (Defendant Smith) destroyed this grievance in an attempt to conceal the nature of Plaintiff's grievance and so "the state and it's (sic) agents could allow serious physical injuries to come to me as a form of

---

[1] The recited allegations are taken from Plaintiff's Complaint, as amended, and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

2

widespread retribution." (Id. at p. 4; Doc. 22-1, p. 1.) Plaintiff avers he had become visibly weaker and smaller due to his weight loss, and officers suggested he go to the commissary to "maintain." (Doc. 10, p. 4.) Plaintiff also avers he "properly" filed another grievance on April 29, 2014, and stated that his previous grievance had been destroyed in an attempt to conceal the denial of adequate nutrition. (Id.)

Plaintiff maintains he spoke to Defendant Toole again during inspection about the denial of adequate nutrition and that Defendant Toole told him Georgia State Prison did not offer vegan meals, but officials were looking into doing so. (Id.) According to Plaintiff, he explained to Defendant Toole that he should not have to wait for the future to receive his vegan diet. (Id.) Plaintiff also states stickers identifying him and his vegan meal requirement were placed on his trays, even though the prison did not provide vegan meals, "[a]s a malicious tactic to conceal facts and a mockery towards my religious exercise." (Id.)

Plaintiff contends he began refusing to accept any trays because of the presence of meat, in violation of his religious requirements, on May 8, 2014. (Id. at p. 5.) Plaintiff states the door charts, which officers are required to sign every 30 minutes, noted he was on a hunger strike. Plaintiff also states the established procedures required him to be seen by medical personnel on a daily basis after he missed nine (9) meals. (Id.) Plaintiff maintains the State ordered "it's (sic) agents not to have me medically seen or treated[ ]" due to "ill intent to cause and allow irreparable harms[.]" (Id.)

Plaintiff alleges he had surgery on his right shoulder on May 15, 2014, which involved detaching his bicep and tendon and reattachment in a different place, the cleaning of his rotator cuff, and the shaving of a bone in his shoulder. (Id.) Plaintiff maintains he had to be taken to the medical unit that night because his incision site would not stop bleeding. Plaintiff states the

nurse cautioned him he had to eat in order to heal. (Id.) Plaintiff also states Dr. Steve Nicolou examined him the following day and explained to Plaintiff the importance of protein in the healing process. (Id.) Plaintiff asserts he informed Dr. Nicolou of his religious precepts, and Dr. Nicolou told him he could not make a medical order to change Plaintiff's diet because his religious precepts did not present a medical issue. Dr. Nicolou encouraged Plaintiff to eat because failing to do so would prevent healing and could expose Plaintiff to bacteria and infections. (Id. at p. 6.) Plaintiff states he still refused to eat the prohibited foods he was provided over the course of the following two to three (2–3) weeks' time, and he had lost 25 pounds from the time he arrived at Georgia State Prison.

Plaintiff contends he went to the medical unit on June 6, 2014, to have his bandage changed, and the nurse noticed the surgical wound was swollen and excessively bleeding. (Id.) Plaintiff maintains Dr. Nicolou explained his surgical wound was not going to heal if he did not eat. Plaintiff asserts Dr. Nicolou told him to accept the trays so that he could be medically treated for a lack of protein and nutrients, which Dr. Nicolou could not do if Plaintiff continued with his hunger strike. (Id.) Plaintiff asserts he agreed to accept the trays, but he still did not eat the prohibited items, even though his liver and other organs were deteriorating. (Id. at p. 7.) Plaintiff also asserts Dr. Nicolou prescribed a 90-day supply of Ensure to be taken twice a day. (Id. at p. 6.) Despite having Ensure and any permissible commissary items he was able to get from another inmate, Plaintiff asserts he was not receiving adequate nutrition. (Id. at p. 7.)

After conducting the requisite frivolity review, Plaintiff's Complaint, as amended, was served upon Defendants, in their individual capacities, on the basis of Plaintiff's allegations that Defendants violated his right to free exercise of his religion and failed to provide Plaintiff with nutritionally adequate food, in violation of the Eighth Amendment's proscription against cruel

4

and unusual punishment.[2] Plaintiff's Complaint was also served based on Plaintiff's claims for injunctive relief under the RLUIPA. (Doc. 30.) Upon review of Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, the Honorable B. Avant Edenfield, *inter alia*, dismissed Plaintiff's RLUIPA claims in their entirety, thus leaving Plaintiff's constitutional claims against Defendants in their individual capacities as the remaining claims. (Doc. 49.)

DISCUSSION

Defendants set forth several grounds for dismissal of Plaintiff's Complaint in their Motion. First, Defendants aver Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint. Defendants note Plaintiff does not state a claim for relief under the First Amendment.[3] Defendants also note Plaintiff, as a "three striker" within the meaning of Section 1915(g), is not entitled to recover damages. (Doc. 43-1.) As set forth below, the undersigned agrees that Plaintiff failed to exhaust his administrative remedies prior to filing his Complaint, and his Complaint is due to be dismissed on this ground. Accordingly, the Court need not address Defendants' other arguments for dismissal.

---

[2] The Magistrate Judge originally recommended Plaintiff's Complaint be dismissed outright, without prejudice, pursuant to 28 U.S.C. § 1915(g) because Plaintiff has at least (3) "strikes" against him (i.e., causes of action and/or appeals which were dismissed as being frivolous, malicious, or failing to state a claim upon which relief may be granted). (Doc. 5.) Plaintiff filed Objections to the Magistrate Judge's Report, a Motion to Amend, and an Amended Complaint. The Magistrate Judge granted Plaintiff's Motion to Amend, recommended the dismissal of certain claims and Defendants, and directed the service of Plaintiff's Complaint, as amended, upon Defendants Toole, Paul, and Smith. (Docs. 11, 18, 20.) Plaintiff then filed another Motion to Amend. Based on this Motion, the Magistrate Judge: vacated his previous recommendation; recommended that Plaintiff's § 1983 claims against the State of Georgia, his monetary damages claims against the individual Defendants in their official capacities, and his monetary damages claims under the RLUIPA against Defendants be dismissed; his motions for temporary restraining order and preliminary injunction be denied; and ordered service of Plaintiff's Complaint and the amendments thereto upon Defendants Toole, Paul, Smith, and the State of Georgia. (Docs. 30, 31.)

[3] Defendants also move for dismissal of Plaintiff's injunctive relief claims. (Doc. 43-1, p. 10) (incorporating their first Motion to Dismiss, doc. 28.) As noted in this Report and in Judge Edenfield's Order of April 1, 2015, Plaintiff no longer has any injunctive relief claims pending. (Doc. 49.)

5

## I. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the Court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

## II. Exhaustion Analysis

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available

6

administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159

F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### B. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. This SOP does not require an inmate to attempt to informally resolve his complaint before filing a formal grievance. (Doc. No. 43-3, p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 6.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8) (emphasis in original.) The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10)

calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 10–11.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

With these standards and procedures in mind, the Court now addresses Defendants' argument that Plaintiff did not exhaust his administrative remedies as to his claims against them.

### C. Assessment of Plaintiff's Exhaustion

Defendants assert Plaintiff's grievance history reveals he only filed two (2) grievances while he was housed at Georgia State Prison prior to May 19, 2014, the date he filed his Complaint with this Court. (Doc. 43-1, p. 9.) Defendants note Plaintiff's assertion that he filed a grievance in March 2014 regarding the denial of his vegan meals, but they also note there is no record of this filing. Rather, Defendants state the evidence shows Plaintiff filed a grievance in April 2014, which was not resolved by the time Plaintiff filed his Complaint. (Id. at p. 10.)

In response, Plaintiff asserts he filed a grievance on March 18, 2014, regarding the denial of his vegan meals. Plaintiff also asserts he filed another grievance on March 27, 2014, and asserted he was being denied adequate nutrition. (Doc. 57, p. 4.) Nevertheless, Plaintiff notes, these two (2) grievances are not reflected in his grievance history. Plaintiff contends he filed another grievance, Grievance Number 173334, regarding the destruction of his March 27, 2014, grievance. (Id.) Plaintiff maintains Defendants have acted in contravention to the applicable SOP and are denying the issuance of receipts for grievances "to deliberately deny access to the

[grievance] procedure[.]" (Id.) Plaintiff states this practice is designed to destroy grievances and cover-up facts, while threatening to deny access to the courts." (Id. at pp. 4–5.) According to Plaintiff, Defendants' records lack reliability and trustworthiness. (Id. at pp. 5–6.)

Defendants counter that Plaintiff's assertions lack merit. While Defendants note Plaintiff correctly asserts his emergency grievance is not reflected in his grievance history, Defendants state this grievance did not meet the criteria for an emergency grievance. Because of this, Defendants aver, the grievance was returned to him for resubmission as a regular grievance, which Plaintiff failed to do. (Doc. 62, p. 5.) Defendants maintain the evidence they presented clearly shows Plaintiff failed to exhaust his administrative remedies prior to filing his Complaint. (Id.)

Plaintiff reiterates he filed grievances on March 18 and 27, 2014, and these grievances were filed according to the applicable SOP. Plaintiff asserts these grievances were not returned to him, contrary to Defendants' assertion. (Doc. 63, p. 2.)

Accepting Plaintiff's version of facts as true, there remains a question of whether Plaintiff exhausted his administrative remedies prior to the filing of his Complaint. Thus, the Court resolves this question by assessing the evidence the parties submitted in support of their respective positions. Turner, 541 F.3d at 1083.

The Court notes Plaintiff submitted a copy of a grievance bearing the date of March 18, 2014, in which he alleges his religious practices have been infringed because he has been housed where his required diet is not prepared. Plaintiff wrote "Emergency Grievance" across the top of this document. (Doc. 57, p. 22.) Plaintiff described events in this grievance which allegedly occurred during the weekend preceding the filing of this "emergency grievance" (March 14th through 16th). (Id. at p. 23.) Defendant Smith declared the contents of this grievance do not

meet the definition of an emergency, so this grievance would have been returned to Plaintiff so he could file this as an original grievance.[4] (Doc. 62-1, p. 3.)

An "emergency grievance" is defined under the SOP as: "An unexpected situation involving a significant threat to the health, safety[,] or welfare of an offender that requires prompt action." (Doc. 43-3, p. 3.) Grievances of this nature are to be immediately referred to the Grievance Coordinator. (Id. at p. 13.) If the Grievance Coordinator determines the grievance does not fit the definition of "emergency grievance", the grievance will be returned to the inmate, who "has 7 calendar days from receipt to file it as an Original Grievance." (Id.)

It appears there is no record of this grievance in Plaintiff's grievance history because this grievance was not actually filed. The reason this grievance was not filed was because it did not fit the definition of "emergency grievance" in Defendant Smith's (the Grievance Coordinator) estimation. The Court recognizes Defendants' assertion that there is no record that Plaintiff resubmitted an original grievance relating to the issues contained in this emergency grievance. (Doc. 62-1, p. 3.) To be sure, there is nothing concrete before the Court—other than Plaintiff's own contentions—that he filed a grievance on March 27, 2014, and Plaintiff has been steadfast in his claim that his March 27, 2014, grievance was destroyed. (See, e.g., Doc. 1, p. 5.) However, the Court does not find this distinct contention—that the grievance dated March 27, 2014, was destroyed as an effort to hamper Plaintiff's access to the grievance procedure and to conceal Defendants' actions— to be meritorious.

By Plaintiff's version, the reputed March 27, 2014, grievance was destroyed in an attempt to cover up Defendants' actions and to deny him access to the grievance process. (Doc. 57, pp. 4–5.) But, the evidence before the Court belies Plaintiff's version of events as to the grievance process and its availability to Plaintiff. According to his grievance history printout,

---

[4] SOP IIB05-0001 refers to a formal grievance as an "original grievance". (Doc. 43-3, p. 8.)

11

Plaintiff was able to file five (5) grievances while he was housed at Georgia State Prison. (Doc. 43-4, p. 2.) This history of grievance filing negates Plaintiff's argument that he was denied access to the grievance process. Furthermore, the fact that Defendants kept and are able to produce records evidencing the many grievances Plaintiff filed contradicts his contention that Defendants destroyed documents to cover up his grievance filings.

Of import here, Defendants' records reveal that Plaintiff filed Grievance Number 173334 on April 29, 2014, (id.), in which he stated he filed a grievance on March 27, 2014, and alleged in that grievance he was denied his religious diet. (Doc. 57, p. 12.) The Warden denied Plaintiff's April 29, 2014, grievance on July 21, 2014, and Plaintiff received the denial on July 28, 2014. (Id. at p. 14.) Plaintiff appealed the Warden's denial, and his appeal was likewise denied on August 26, 2014.[5] (Id. at p. 15.)

Plaintiff filed his grievance on April 29, 2014, and he filed his Complaint on May 19, 2014, months before that grievance was resolved. (Doc. 1.) It is apparent Plaintiff did not exhaust his administrative remedies prior to filing his cause of action. Plaintiff was required to await the Warden's response or for the time to receive a response to elapse before he had to file any appeal, which would have occurred after May 19, 2014.

For these reasons, this portion of Defendants' Motion to Dismiss should be **GRANTED**, and Plaintiff's Complaint, as amended, should be **DISMISSED**, without prejudice. As a result, it is unnecessary to address the remaining portion of Defendants' Motion.

---

[5] The Appeal Response form does not indicate on what date Plaintiff received the final decision on Grievance Number 173334, but the decision is dated August 26, 2014. (Doc. 57, p. 15.) However, according to Plaintiff's grievance history, the status of his appeal was listed as "denied" and lists September 17, 2014, as the date of that denial. (Doc. 43-4, p. 2.) The undersigned can only presume this is the date Plaintiff received notification of the denial of his grievance on appeal. Whether Plaintiff's appeal was denied on August 26 or September 17, 2014, is of no moment, as both dates post-date the filing of Plaintiff's Complaint in this Court.

### III. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[6] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

---

[6] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Second Motion to Dismiss, (doc. 43), be **GRANTED**. I also **RECOMMEND** Plaintiff's Complaint, as amended, be **DISMISSED**, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies prior to the filing of his Complaint. I further **RECOMMEND** that Defendants' first Motion to Dismiss, (doc. 28), be **DISMISSED AS MOOT** and that Plaintiff be **DENIED** leave to appeal *in forma pauperis*. Plaintiff's Motions to Amend/Correct, (docs. 33, 35), Motion for Leave to File, (doc. 41), Motion for Extension of Time, (doc. 42), Motion for Defendants to Respond to his Complaint, (doc. 50), and his Motion to Appoint Counsel, (doc. 54), are **DISMISSED AS MOOT**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The

Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 27th day of July, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA